**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

NESTOR E. CRUZ-DIAZ, ET AL.,

    Plaintiffs,

       v.                              CIV. NO. 13-1952(PG)

MUNICIPALITY OF GUAYAMA, ET AL.,

    Defendants.

**OPINION AND ORDER**

Before the court is a motion to dismiss filed by the defendants in their official capacity. See Docket No. 8. For the reasons set forth below, the court **GRANTS IN PART AND DENIES IN PART** the defendants' motion.

**I. BACKGROUND**

On December 26, 2013, plaintiffs Nestor E. Cruz DIaz, Deborah Cartagena Rios, Maria Vazquez Vazquez, Leyshla T. Hernandez Lopez, Madeline Rivera Campos, Joel Martinez Rivera, Wanda I. Rodriguez Serrano, Carlos L. Colon Torres, Josefina Santiago de Jesus, Luis Garcia Roman, Christopher J. Mendoza Diaz, Luis Ferrer Amaro and Angel S. Ortiz Rivera filed a complaint against defendants Eduardo Cintron Suarez, Mayor of the Municipality of Guayama (Cintron or the Mayor); Ito Correa, Vice-Mayor of the Municipality; Ramon Conde, Director of Public Works at the Municipality; Carmen Escobar, Director of Human Resources at the Municipality; Pedro Garcia, a supervisor at the Municipality; the Municipality of Guayama ("the Municipality"); and several unidentified defendants. The action was filed against defendants in both their official and personal capacity.

According to the plaintiffs, they were transitory employees of the Municipality that were affiliated to the New Progressive Party (NPP). However, after co-defendant Cintron was elected Mayor in November of 2012, the plaintiffs allege he terminated them from their employment because of their affiliation to his rival political party, namely, the Popular Democratic Party (PDP). All plaintiffs allege to have been subsequently replaced with people affiliated with the PDP, of which Cintron is the municipal president and under which ticket he ran for mayor. The plaintiffs now maintain that their discharge, as well as the defendants' refusal to renew their employment,

CIV. NO. 13-1952(PG)                                                    Page 2

amount to political discrimination prohibited by the First Amendment to the United States Constitution.[1] See Docket No. 1 at ¶ 104. Pursuant to 42 U.S.C. § 1983, the plaintiffs now seek compensatory and punitive damages and injunctive relief for the alleged violations of their constitutional rights. See Docket No. 1. Plaintiffs also invoke the court's supplemental jurisdiction over the state-law claims brought pursuant to Puerto Rico Law No. 131 of May 13, 1943, P.R. LAWS ANN. tit. 1, §§ 13-19 ("Law 131") and Articles 1802 and 1803 of the Civil Code of Puerto Rico ("Articles 1802 and 1803"), P.R. LAWS ANN. tit. 31, §§ 5141 and 5142. See Docket No. 1.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails to state a claim upon which relief could be granted. "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Garcia-Catalan v. U.S., 734 F.3d 100, 102 (1st Cir.2013) (quoting FED.R.CIV.P. 8(a)(2)). When ruling on a motion to dismiss for failure to state a claim, a district court must "ask whether the complaint states a claim to relief that is plausible on its face, accepting the plaintiff's factual allegations and drawing all reasonable inferences in the plaintiff's favor." Cooper v. Charter Communications Entertainments I, LLC, 760 F.3d 103, 106 (1st Cir.2014) (citing Maloy v. Ballori–Lage, 744 F.3d 250, 252 (1st Cir.2014)) (internal quotation marks omitted). Additionally, courts "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." A.G. ex rel. Maddox v. v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir.2013) (citing Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir.2011)).

"To cross the plausibility threshold, the plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Cooper, 760 F.3d at 106 (citing Maloy, 744 F.3d at 252). See also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, … , on the assumption that all the

---

[1] The plaintiffs make a passing reference to a claim of violation of their Equal Protection rights under the United States Consitution. See *Complaint*, Docket No. 1 at Section II, page 2. The defendants accurately point out that the plaintiffs failed to set forth any factual allegation in support of an equal protection claim and thus request its dismissal. See Docket No. 8 at page 4. The court agrees and thus **DISMISSES** any such claim without prejudice.

allegations in the complaint are true (even if doubtful in fact) … ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted).

"In resolving a motion to dismiss, a court should employ a two-pronged approach. It should begin by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir.2011) (citing Twombly, 550 U.S. at 555) (internal quotation marks omitted). That is, the court "need not accept as true legal conclusions from the complaint or naked assertions devoid of further factual enhancement." Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir.2009) (citing Iqbal, 556 U.S. at 678). "A complaint 'must contain more than a rote recital of the elements of a cause of action,' but need not include 'detailed factual allegations.'" Rodriquez-Vives v. Puerto Rico Firefighters Corps of Puerto Rico, 743 F.3d 278, 283 (1st Cir.2014) (citing Rodríguez–Reyes v. Molina–Rodríguez, 711 F.3d 49, 53 (1st Cir.2013)). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." Ocasio-Hernandez, 640 F.3d at 12 (citing Iqbal, 556 U.S. at 681).

"Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 664-664. Nevertheless, when evaluating the plausibility of a legal claim, a court may not "attempt to forecast a plaintiff's likelihood of success on the merits; a well-pleaded complaint may proceed even if … a recovery is very remote and unlikely." Ocasio-Hernandez, 640 F.3d at 12-13 (citing Twombly, 550 U.S. at 556). As a result, courts should read the complaint "as a whole" and be cautious not to apply the plausibility standard "too mechanically." See Rodriguez-Vives, 743 F.3d at 283 (citing Garcia-Catalan, 734 F.3d at 101, 103).

### III. DISCUSSION

**A. Section 1983**

Section 1983 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 924 (1982) (internal quotation marks omitted). To prevail in a Section 1983 claim,

CIV. NO. 13-1952(PG)                                                    Page 4

a plaintiff "must allege facts sufficient to support a determination (i) that the conduct complained of has been committed under color of state law, and (ii) that [the alleged] conduct worked a denial of rights secured by the Constitution or laws of the United States." Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir.2005) (quoting Romero-Barceló v. Hernández- Agosto, 75 F.3d 23, 32 (1st Cir.1996)). For Section 1983 liability purposes, "a state employee generally acts under color of state law when, while performing in his official capacity or exercising his official responsibilities, he abuses the position given to him by the State." West v. Atkins, 487 U.S. 42, 49 (1988).

Section 1983 claims require that a plaintiff establish three elements for liability to ensue: deprivation of a right, a causal connection between the actor and the deprivation, and state action. See Sanchez v. Pereira-Castillo, 590 F.3d 31 (1st Cir.2009); see also 42 U.S.C. § 1983. The causation element requires that the plaintiff establish (1) that the actions of the defendant deprived the plaintiff of a protected right, and (2) "that the defendant's conduct was intentional, grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights." Concepción v. Municipality of Gurabo, 558 F.Supp.2d 149, 162 (D.P.R.2007). Moreover, a plaintiff must link each particular defendant to the alleged violation of federal rights. See González-Piña v. Rodríguez, 407 F.3d 425, 432 (1st Cir.2005). A plaintiff may do so by indicating any "personal action or inaction [by the defendants] within the scope of [their] responsibilities that would make [them] personally answerable in damages under Section 1983." Pinto v. Nettleship, 737 F.2d 130, 133 (1st Cir.1984).

The plaintiffs here bring suit for the violation of their constitutional rights under the First Amendment, which "insulates public employees who hold nonpolicymaking positions from the vicissitudes of personnel decisions rooted in partisan political concerns." Bergeron v. Cabral, 560 F.3d 1, 7 (1st Cir.2009) (citing Rutan v. Repub. Party of Ill., 497 U.S. 62, 74-76 (1990)). In essence, "[g]overnment officials are forbidden by the First Amendment from taking adverse action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment." Ocasio-Hernandez, 640 F.3d at 10 (citing Rutan, 497 U.S. at 75-76; Welch v. Ciampa, 542 F.3d 927, 938-39 (1st Cir.2008)). Accordingly, "a government employer cannot discharge public employees merely because they are not sponsored by or affiliated with a particular political party." Galloza v.

CIV. NO. 13-1952(PG)                                                    Page 5

Foy, 389 F.3d 26, 28 (1st Cir.2004) (citing Elrod v. Burns, 427 U.S. 347, 350 (1976)).

To establish a claim of political discrimination, "the workers must show that: (1) they and the defendants have 'opposing political affiliations,' (2) the defendants were aware of the workers' political affiliations, (3) an 'adverse employment action' (e.g., an employment termination) occurred, and (4) 'political affiliation was a substantial or motivating factor for the adverse employment action.'" Ocasio-Hernandez v. Fortuno-Burset, --- F.3d ----, 2015 WL 317135 at *3 (1st Cir. January 20, 2015) (citations omitted).

### 1. Transitory Employees

In their motion to dismiss, the defendants first argue that the plaintiffs fail to allege a claim for which relief can be granted because they failed to claim they were "full-time employees." Docket No. 8 at page 6. On the contrary, the defendants contend that the plaintiffs were all "independent contractors" and not public employees, id., and that "at-will" employees are not entitled to the protection afforded by Section 1983 to the extent they had no expectations of renewal, id. at pages 8-10. In their opposition, the plaintiffs responded that they were not self-employed independent contractors but transitory employees as defined by the Autonomous Municipalities Act ("AMA"), 21 P.R. LAWS ANN. § 4554. Therefore, as former municipal employees, it is the plaintiffs' contention that they were indeed protected from political discrimination. See Docket No. 14 at page 5. In addition, the plaintiffs argue that alleging that they had an expectation of continued employment is unnecessary insofar as they are not setting forth a due process claim, only a political discrimination claim. See id. at page 3.

In their complaint, all thirteen plaintiffs allege having been transitory employees of the Municipality. See Docket No. 1 at ¶ 6. Moreover, the documents attached as exhibits to the defendants' motion to dismiss, to wit, the plaintiffs' employment contracts, clearly state that they were classified as transitory. See Docket No. 8-1, 18-1.

Section 11.004 of the AMA states that:

> Municipal employees shall be classified as confidential, probationary career, regular career, transitory and irregular.
> …
> (c) Transitory employees.— Transitory appointments shall not exceed one (1) year, except for persons who are appointed to fixed-term special projects defrayed with federal or Commonwealth funds, whose appointment

CIV. NO. 13-1952(PG) Page 6

        shall correspond to the standards provided by the law
        under which they are appointed.

21 P.R. LAWS ANN. § 4554. It thus stems from the content of the law and the documents provided by the defendants themselves that their assertions that the plaintiffs were "independent contractors," and not employees, hold no water.[2]

    The defendants also argue that the plaintiffs failed to allege that they had "expectations of a contract renewal," Docket No. 8 at page 10, in particular, plaintiffs Rivera-Campos and Mendoza-Diaz, who were either volunteering[3] or whose contracts had already expired at the time they were terminated. Id. at pages 10-11. However, gleaning the facts from the plaintiffs' complaint, the court finds that the plaintiffs alleged causes of action for both their discriminatory termination and the failure to renew their contract. They specifically allege that "the motivating factor behind the dismissal and/or non-renewal of Plaintiffs' appointments was their political affiliation with the NPP and its candidates." Docket No. 1 at ¶ 104. In addition, the plaintiffs set forth specific allegations regarding the circumstances surrounding their respective terminations or failure to renew their contracts, which in turn lead them to allege that the motivation for these adverse employment actions was discriminatory and illegal.

    With regards to claims of non-renewal of term employees, the First Circuit has repeatedly held that the Elrod-Branti prohibition against political affiliation discrimination applies to a local government's decision whether to renew the contract of a transitory employee. See Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 98 (1st Cir.1997). "[T]he fact that a transitory employee does not have a reasonable expectation of renewal in his or her employment ... does not defeat a First Amendment claim." Borges Colon v. Roman-Abreu, 438 F.3d 1, 18 (1st Cir.2006) (citing Gomez v. Rivera Rodriguez, 344 F.3d 103, 111 n. 5 (1st Cir.2003)). See also Padilla-Garcia v. Guillermo Rodriguez, 212 F.3d 69, 75 (1st Cir.2000) (holding that the rule that non-policymaking public employees are protected from adverse employment

---

    [2] By the same token, insofar as the plaintiffs were not independent contractors, the defendants' contention that dismissal is warranted against Mayor Cintron-Suarez because the plaintiffs failed to allege his "contract making authority," Docket No. 8 at page 15, is also without merit.

    [3] Whether plaintiff Rivera-Campos was a transitory employee with an expired contract or a volunteer at the time of her termination, we take the opportunity to note that the First Circuit Court of Appeals "has assumed without deciding that a public volunteer position is a valuable government benefit, the deprivation of which can trigger First Amendment scrutiny." Barton v. Clancy, 632 F.3d 9, 25 (1st Cir.2011).

decisions based on their political affiliation extends to a politically motivated non-renewal of a term of employment, regardless of the transitory nature of the position); Nieves-Villanueva, 133 F.3d at 98 ("A municipality may not allow transitory employees contracts to expire if the primary motive is to punish them for their political affiliation."); Cheveras Pacheco v. Rivera Gonzalez, 809 F.2d 125, 127–29 (1st Cir.1987) (holding that transitory employees are entitled to protection under the Elrod/Branti line of cases).

Therefore, despite the fact that the plaintiffs were discharged from their positions upon the expiration of their term, they have a viable First Amendment claim if, as properly alleged, the failure to renew their contracts was due to political discrimination. Accordingly, the court hereby **DENIES** the defendants' request that the plaintiff's Section 1983 claims be dismissed for failing to allege an expectation of renewal.

### 2. Supervisory Defendants' Actions

In their motion to dismiss, the defendants argue that the complaint is defective as to co-defendants Ito Correa, Ramon Conde, Carmen Escobar and Pedro Garcia because the plaintiffs failed to allege that these co-defendants were personally responsible for the purported unlawful conduct. See Docket No. 8 at page 11-13. Specifically, the defendants complain that the plaintiffs did not plead that these co-defendants either directly terminated the plaintiffs or had the authority to do so. See id. at pages 12-13. In their response, the plaintiffs opposed the defendants position by making reference to the specific allegations against them in the complaint, which establish that they supervised some of the plaintiffs or were in charge of implementing personnel transactions within the Municipality. See Docket No. 14 at pages 12-17.

We begin by summarizing the allegations against these co-defendants, which for purposes of our analysis, shall be assumed to be true.

Co-defendant Ito Correa is alleged to be the Vice-Mayor of the Municipality of Guayama since January of 2013. See Docket No. 1 at ¶ 13. According to the allegations in the complaint, co-defendant Correa terminated plaintiff Cartagena-Rios. Id. at ¶ 34. In addition, on January 16, 2013, plaintiff Colon-Torres allegedly returned to his job after the holidays but could not enter his workspace because co-defendant Correa had instructed the personnel not to allow "the NPP employees" to enter. Mr. Correa purportedly stated that all of "Glorimari's employees were now out of a job and were not

entitled to anything."[4] Id. at ¶ 68. Moreover, it is alleged that when plaintiff Mendoza-Diaz went to the Human Resources Department on January 16, 2013 to inquire about his appointment, he was told that it would not be renewed and that co-defendant Correa told him that the person who had to give him a dismissal letter was [former Mayor] Jaime-Rodriguez. Id. at ¶ 85.

Co-defendant Ramon Conde is alleged to be the Director of Public Works at the Municipality of Guayama since January of 2013. Id. at ¶ 14. Following the 2012 elections, it is alleged that co-defendant Conde told plaintiff Ferrer-Amaro that, as he understood it, Ferrer-Amaro would not be able to work in the Municipality under the new PDP administration because he was heavily identified with the NPP. Id. at ¶ 91. However, on January 15, 2013, plaintiff Ferrer-Amaro alleges that after showing up for work, the Mayor instructed co-defendant Conde to ask the plaintiff what he was doing there, and later told the plaintiff that "you are a loser NPP, you cannot be here anymore, you lost, the loser 'skinny-woman' (in reference to former Mayor Jaime-Rodriguez) has to protect you, she has to protect the NPP'ers, we don't have to protect you, you have to leave before I call the guards." Id. at ¶ 91.

The plaintiffs allege Carmen Escobar is the Director of Human Resources at the Municipality of Guayama since January of 2013. In particular, plaintiff Cruz-Diaz claims that when he went to work on January 16, 2013, Pedro Garcia of the Municipal Department of Public Works - his supervisor and a PDP activist - told him that he had to leave because his appointment had expired and that all of the employees who were identified with former Mayor Jaime-Rodriguez had to leave. Pedro Garcia also told him that "you're out of a job because of her [Jaime-Rodriguez], we are going to clean house." Id. at ¶ 23. Plaintiff Cruz-Diaz then headed to the Human Resources Department of the Municipality where co-defendant Escobar allegedly told him that "because of Glorimari [Jaime-Rodriguez], you are out of a job and have no right to anything." Id. at ¶ 25. When plaintiff Cruz-Diaz subsequently returned to the Human Resources Department to inquire as to the payment of vacation and sickness leave, co-defendant Escobar purportedly answered him that he was not entitled to any of those benefits and that "Glorimari [Jaime-Rodriguez] was to blame, she appointed him, she had to answer to him." Id. at ¶ 25. Plaintiff

---

[4] The plaintiffs contend that all defendants are aware of plaintiffs' affiliation with the NPP and their work with and support of the previous Mayor of the Municipality, Hon. Glorimari Jaime-Rodriguez (hereinafter "Jaime-Rodriguez"), who was and remains the municipal president of the NPP. All plaintiffs were appointed to their transitory positions at the Municipality under Jaime-Rodriguez's administration. See Docket No. 1 at ¶ 3.

Hernandez-Lopez also claims that after she was terminated, she went to the Human Resources Department where co-defendant Escobar supposedly said that "Glorimari [Jaime-Rodriguez] was to blame because she had appointed her." Id. at ¶ 46.

Finally, as to co-defendant Pedro Garcia, the court makes reference to plaintiff Cruz-Diaz's allegations regarding Garcia's politically-motivated termination and remarks, as set forth in the preceding paragraph. Id. at ¶ 23. Furthermore, plaintiff Cruz-Diaz alleges that after being discharged, he went to the Municipal Department of Public Works to ask whether he could work as a volunteer, but Pedro Garcia told him that he could not work as a volunteer because the volunteers were "theirs," meaning they were PDP supporters, and that they would be the ones to receive new appointments. Id. at ¶ 26. Shortly thereafter, plaintiff Cruz-Diaz claims he returned to the Public Works Department but was kicked out by co-defendant Garcia, who told him that "he could not be there because they were cleaning," in reference to his earlier remark that they would clean out the employees who supported the NPP. Id. at ¶ 28.

"[S]upervisory liability under section 1983 cannot arise solely on the basis of respondeat superior." Grajales v. Puerto Rico Ports Authority, 682 F.3d 40, 47 (1st Cir.2012) (citing Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 502 (1st Cir.2011)). "Public officials may be held liable under § 1983 for a constitutional violation only if a plaintiff can establish that his or her constitutional injury resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." Ocasio-Hernandez, 640 F.3d at 16 (internal citations and quotation marks omitted). "Rather, 'only persons who were directly involved in the wrongdoing may be held liable.'" Torres-Santiago v. Municipality of Adjuntas, 693 F.3d 230, 239 (1st Cir.2012) (citing Martinez–Vélez v. Rey–Hernández, 506 F.3d 32, 41 (1st Cir.2007).

The court is able to gather from the facts recited above that co-defendants Ito Correa, Ramon Conde, Carmen Escobar and Pedro Garcia all held supervisory positions and had a role in personnel management. According to the complaint, these co-defendants openly acknowledged to the plaintiffs that their discharge or that the failure to renew their transitory appointments was politically motivated insofar as it responded to the plaintiffs' affiliation with the NPP. The court finds that the level of personal involvement and familiarity with the alleged adverse employment actions on the part of these

co-defendants is sufficient to survive a motion to dismiss. See Ocasio-Hernandez, 640 F.3d at 16. Thus, the defendants' request that the claims against these defendants be dismissed for lack of causation is hereby **DENIED**.

### 3. Claims against Mayor

In their complaint, the plaintiffs set forth claims of political discrimination against the Mayor and municipal president of the PDP, co-defendant Cintron. See Docket No. 1 at ¶ 4. He is alleged to be the "nominating authority" of the Municipality, id. at ¶ 6. According to the plaintiffs, their terminations and the refusal to rehire them after the expiration of their terms responded to the Mayor's instructions to "clean the house" of the NPP employees. See id. at ¶ 22, 30, 40, 67.

In their motion to dismiss, the defendants argue that the claims against Cintron should be dismissed insofar as the plaintiffs failed to allege that Cintron had the "authority to terminate employees," Docket No. 8 at page 14. According to the defendants, "[a]lleging capacity or authority to enter a contract, or alternatively to terminate a contract is, then, a *prima facie* element of pleading a contractual obligation." Id. at 15. The defendants are mistaken.

Firstly, the plaintiffs distinctly make reference in their complaint to the Mayor's nominating authority. See Docket No. 1 at ¶ 6. Second, it is clearly established that "Puerto Rico law gives mayors … the ultimate authority over municipal hiring and firing decisions." Rodriguez v. Municipality of San Juan, 659 F.3d 168, 178 (1st Cir.2011) (citing P.R. LAWS ANN. tit. 21, § 4109(o)). The referenced statute states that "[t]he mayor shall be the highest authority of the executive branch of the municipal government, and as such, is charged with the direction, administration, and supervision of the operations of the municipality," and shall "[a]ppoint all officials and employees and dismiss them from their positions when necessary for the good of the service, for just cause and in accordance with the procedure established in this chapter." P.R. LAWS ANN. tit. 21, § 4109. In fact, the First Circuit Court of Appeals has "recognized on a number of occasions that mayors in Puerto Rico are the government officials ultimately responsible for employment decisions of the municipality." Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 770 (1st Cir.2010) (internal citations and quotation marks omitted). Therefore, the law itself supports the plaintiffs' allegation that the Mayor possesses the required authority to dismiss and/or appoint them.

CIV. NO. 13-1952(PG)                                                    Page 11

Finally, the defendants suggestion that the plaintiffs' complaint falls short because they failed to allege an element of the political discrimination prima facie case is wide of the mark. "To achieve plausibility, a complaint need not plead facts sufficient to make a prima facie case or allege all facts necessary to succeed at trial." Medina-Velazquez v. Hernandez-Gregorat, 767 F.3d 103, 108 (1st Cir.2014) (citing Carrero–Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711, 717–18 (1st Cir.2014)). "The prima facie standard is an evidentiary standard, not a pleading standard, and there is no need to set forth a detailed evidentiary proffer in a complaint." Medina-Velazquez, 767 F.3d at 108 (citing Rodríguez–Reyes, v. Molina–Rodríguez, 711 F.3d 49, 54 (1st Cir.2013)).

Pursuant to the foregoing, the court finds that the plaintiffs' reference to co-defendant Cintron's nominating authority is sufficient to support the allegations against him for the purported violations of the plaintiffs' First Amendment rights. The defendants' request for dismissal on these grounds is thus **DENIED**.

### 4. Municipal Liability

In their motion, the defendants argue that the claims against the Municipality should be dismissed because the plaintiffs do not "allege nor [sic] insinuate an ongoing policy, practice, or custom that would render the municipality liable under § 1983." Docket No. 8 at page 17.

"As with government officials, a municipality cannot be held liable for the constitutional violations of municipal employees on a respondeat superior theory." Rodriguez-Garcia, 610 F.3d at 769 (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). "Liability only attaches where the municipality causes the deprivation through 'an official policy or custom.'" Rodriguez v. Municipality of San Juan, 659 F.3d at 181 (quoting Welch, 542 F.3d at 941). "One way of establishing a policy or custom is by showing that 'a person with final policymaking authority' caused the supposed constitutional injury." Rodriguez v. Municipality of San Juan, 659 F.3d at 181 (citing Welch, 542 F.3d at 941-942). Like other mayors in Puerto Rico, Cintron has final policymaking authority for municipal employment generally in Guayama. See Rodríguez–García, 610 F.3d at 770. See also Acevedo–Garcia v. Monroig, 351 F.3d 547, 553 n. 1 (1st Cir.2003) (noting that under Puerto Rico law, mayors of municipalities have the power to appoint and remove municipal officials and employees, and thus mayor's employment decisions ipso facto constituted the official policy of the municipality). "Therefore, liability

CIV. NO. 13-1952(PG)                                                      Page 12

can be imposed on the municipality for [the mayor's] own direct acts or omissions with respect to [the plaintiff]." Rodriguez-Garcia v. Miranda-Marin, 610 F.3d at 770.

The claims in the instant case stem from the Mayor's alleged instructions to the other co-defendants in this case to terminate and not rehire all NPP-affiliated transitory municipal employees. Pursuant to the applicable caselaw, municipal liability may attach from this single official act. As a result, the defendants' motion to dismiss on these grounds is **DENIED**.

**5. Unidentified Defendants**

The defendants request the dismissal of the claims against the unknown defendants because they are not mentioned in any portion of the plaintiffs' complaint. See Docket No. 8 at page 17. The plaintiffs respond that discovery is needed in order to identity of these individuals. See Docket No. 14 at page 20. "This Court considers that Plaintiffs have shown good cause for their failure to identify the unknown defendants. They are correct in pointing out that in this case only discovery proceedings will provide them with the means to obtain the names of the remaining unknown defendants." Cuebas v. Davila, 618 F.Supp.2d 124, 133 (D.P.R. 2009). The defendants request is thus **DENIED WITHOUT PREJUDICE**.

### IV. CONCLUSION

For the reasons stated above, the defendants' motion is hereby **GRANTED** as to the plaintiffs' equal protection claim, but **DENIED** as to all other causes of action.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, February 6, 2015.

*S/ JUAN M. PEREZ-GIMENEZ*
JUAN M. PEREZ-GIMENEZ
SENIOR U.S. DISTRICT JUDGE